**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**GENISE DOUGLAS,**

**Plaintiff,**

**v.** **Case No. 3:08cv123/MCR/EMT**

**ROBERT M. GATES in his official capacity as SECRETARY, UNITED STATES DEPARTMENT OF DEFENSE,**

**Defendant**
**________________________________/**

**O R D E R**

Genise Douglas filed this lawsuit against her former employer, the Department of Defense (DOD), asserting claims of racial and gender discrimination as well as retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. §§ 2000e-2, et seq.; and breach of contract under state law. Pending before the court is the DOD's motion for summary judgment (doc. 29), which Douglas opposes (doc. 37). Having considered the record and the parties' arguments, the court grants the DOD's motion for summary judgment.

**Background**

In 2003, Douglas, an African-American female, worked for the Army and Air Force Exchange Service, an agency of the DOD.[1] The agency employed Douglas as a Senior Assistant Manager of a Popeye's Restaurant in the Base Exchange at Fort Sam Houston, Texas. In July, 2003, Douglas filed an EEO complaint in which she alleged that her supervisor at Popeye's had subjected her to differential treatment based on her race and

---

[1] The DOD describes the agency as a joint command under the Departments of the Army and Air Force which operates in support of Army and Air Force personnel throughout the world.

gender.[2] In December, 2006, Douglas entered into a settlement agreement with the agency in which she waived all pending EEO complaints. In exchange, the agency agreed to pay Douglas $5,000 and assign her to an Assistant Team Leader position at Kirkuk, Iraq for one year, provided she met the qualifications for that position (e.g., favorable security clearance, health, and DOD requirements). The settlement agreement further provided that, in the event Douglas later believed the agency had breached the agreement, she was required to notify the agency's EEO Director and request either specific implementation of the agreement or reinstatement of her administrative complaint for further processing.[3]

On March 1, 2007, the agency transferred Douglas to an Assistant Team Leader position at Kirkuk, Iraq, working in the Exchange store.[4] Douglas' Team Leader was Maida Salhovic. On June 10, 2007, General Manager Paula Gunderson emailed Human Resources Manager Dan Goodwin, requesting approval to transfer Douglas from Kirkuk because she was overpowering other team members and impairing the team's performance. Similarly, on June 13, 2007, Retail Business Manager Linda Bradshaw requested Goodwin's approval to transfer Douglas because she was overwhelming Salhovic and causing problems at the store. On June 15, 16 and 17, 2007, Bradshaw requested approval three more times, stating Douglas was aggressive, needed close supervision, and would not allow anyone in the store, including her own supervisor,

---

[2] The court does not detail Douglas' 2003 allegations here because, as discussed below, the court does not reach the merits of those claims.

[3] The settlement agreement refers to 29 C.F.R. § 1614.504, which provides: "If the complainant believes that the agency has failed to comply with the terms of a settlement agreement or decision, the complainant shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance. The complainant may request that the terms of settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased."

[4] According to the DOD, the organizational hierarchy, from bottom to top, for retail associates in Kirkuk, Iraq was: Sales Tech Deploy, Assistant Team Leader, Team Leader, General Manager, Area Manager, Vice President - Europe Region, and Senior Vice President - Europe Region. There were also a Retail Business Manager and a Human Resources Manager. The Retail Business Manager appears to have fit into the hierarchy between the Team Leader and the General Manager. The scope of the Human Resources Manager's authority appears to have been similar to that of the Area Manager, as each were described as managing the entire Iraq region.

Salhovic, to answer Bradshaw's questions about problems with the store. On June 17, 2007, Goodwin responded to Bradshaw and stated that, due to issues he could not disclose, Douglas could not be transferred from Kirkuk. Goodwin, because of his position as Human Resources Manager, knew about the agency's settlement agreement with Douglas. As a result, Goodwin decided to transfer Salhovic from Kirkuk instead of transferring Douglas. On July 28, 2007, the agency promoted Douglas, the only available employee qualified to replace Salhovic, to Team Leader.

On August 25, 2007, in an email to Bradshaw, Douglas recounted conflicts between herself and the associates she supervised, stating it was not her job to make them happy, that she would not lower her standards to make them happy, and she had done nothing wrong. On August 26, 2007, Bradshaw responded, identifying numerous problems with Douglas' performance. Specifically, Bradshaw noted Douglas' mistreatment of her associates, failure to accept responsibility for her actions, and poor leadership and communication skills. Bradshaw also expressed her concern that three out of six of the employees supervised by Douglas were choosing to end their tour; however, the record doesn't reflect the identities or motivations of these employees.[5] Nor does the record indicate whether Douglas responded to Bradshaw.

On September 1, 2007, Nick Williams became the General Manager for Northern Iraq, and Douglas' supervisor. On September 15, 2007, Tyler Jank, one of the associates under Douglas' supervision, wrote to Williams requesting a transfer to Kuwait. Jank explained that he wished to transfer because Douglas verbally abused her employees; accused them of theft and dishonesty; and set policies on various matters, including tardiness and meal breaks, that she did not follow herself. On September 16, 2007, another of Douglas' associates, Michaela Jones, emailed Williams to complain that Douglas was verbally abusing her employees and accusing them of theft and dishonesty in front of customers. On September 18, 2007, Williams emailed Douglas, stating he had received

---

[5] Throughout the record and the parties' briefs are references to "EOT," meaning "end of tour". It is clear from the record that an employee could choose to "EOT," meaning quit, at any time; similarly, the agency could "EOT," meaning terminate, an employee.

two requests for transfer from her employees due to the way she was treating them. The same day, Douglas responded to Williams, accusing her associates of laziness and insubordination and her superiors of prying into her affairs. On September 19, 2007, Williams emailed Douglas, stating he had disapproved Jank's and Jones' requests for transfer. Williams also stated he wanted to give Douglas another chance, and was willing to help her if she asked.

On September 21, 2007, Douglas was scheduled for an evaluation of her first one hundred and eighty days of deployment. Williams rated Douglas' performance as satisfactory, assigning her three points out of a possible five. Douglas emailed Williams to protest her score, stating she had worked hard over the last one hundred and eighty days and met certain operating standards.[6] Williams responded that he had supervised Douglas for only twenty-one days, and was basing the score on that time period. Williams stated he would not give Douglas a higher or lower score until he had an opportunity to observe more of her work. Furthermore, Williams stated the performance evaluations were based not only on operating results but also on leadership qualities; however, he advised Douglas she could improve her score if she continued to work hard. Douglas responded that she would not concur with a rating based only on twenty-one days, she had not received specific proof that her leadership skills were lacking, and she would not let associates who lacked passion for their jobs cause her to be ranked as only satisfactory.

On October 8, 2007, Afatia Aliilua, an Assistant Team Leader under Douglas, wrote to Williams that he was stepping down from his position because he could no longer physically or mentally endure working for Douglas. Williams emailed Aliilua's request to Goodwin and to Dana Johnson, the Area Manager. In the email, Williams stated every employee supervised by Douglas had requested to end their employment or to transfer, but didn't specifically discuss any employees' reasons other than Aliilua's. Johnson decided to end Douglas' tour. On October 9, 2007, Douglas contacted the agency, advising that

---

[6] Douglas refers in her email to "Meet or Beat" standards, but it's not clear from the record what that refers to.

the settlement agreement would be breached if her tour was ended.[7] As a result of Douglas' communication, the agency's Vice President of Equal Employment Opportunity, Valerie Wagoner, emailed Williams and Johnson to inform them of Douglas' settlement agreement. Williams responded to Wagoner, stating he had not known of the settlement agreement, but nonetheless Douglas had destroyed the staff at Kirkuk and could not stay. Like Williams, Johnson responded to Wagoner, stating she had no prior knowledge of the settlement agreement, but regardless the agency should terminate Douglas due to her lack of basic interpersonal skills. On October 11, 2007, Williams emailed Douglas to offer her the choice of ending her tour in Iraq or transferring to a non-supervisory position with the Movement Control Team at Victory Base Camp in Baghdad, Iraq. On October 12, 2007, Douglas agreed to be transferred rather than return home; however, she did so under protest, while maintaining that the agency had breached the settlement agreement.

Effective November 2, 2007, Douglas was transferred to the position of courier for the Movement Control Team in Baghdad, Iraq. On November 8, 2007, Douglas notified the DOD of the alleged breach of the settlement agreement. On December 11, 2007, Douglas filed an administrative complaint with the agency alleging racial discrimination and retaliation. On December 26, 2007, Douglas received a Notice of Final Decision from the agency finding no breach of the settlement agreement. On March 24, 2008, Douglas filed this suit. On September 8, 2008, Douglas received a Notice of Final Decision from the agency finding no racial discrimination or retaliation. Douglas subsequently amended her complaint to include her claims of racial discrimination and retaliation. (Docs. 14, 16.)

**Discussion**

A motion for summary judgment should be granted if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1356 (11th Cir. 2007). The court must avoid weighing contradictory evidence or making credibility determinations, *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000), and must draw all

[7] The settlement agreement provided that the agency would transfer Douglas to Kirkuk for one year. By October of 2007, Douglas had been in Kirkuk for less than eight months.

reasonable inferences in the nonmoving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Breach of Settlement Agreement

According to Douglas, the DOD breached the settlement agreement by transferring her from Kirkuk to Baghdad after seven months, when the settlement agreement called for a one year assignment. The DOD argues Douglas has not exhausted her administrative remedies because she failed to notify the agency's EEO Director of the alleged breach, as required by 29 C.F.R. § 1614.504(a).[8] *See Osahar v. Postmaster General of U.S. Postal Serv.*, 263 Fed. Appx. 753, 764 (11th Cir. 2008); *Jones v. Wynne*, 266 Fed. Appx. 903, 905 (11th Cir. 2008). The court disagrees. Drawing all reasonable inferences in favor of douglas, the court infers that Douglas notified the agency of her allegation of breach based on the agency's Notice of Final Decision addressing the allegation. Next, the DOD argues the Court of Federal Claims has exclusive jurisdiction over Douglas' contract claims and this court is powerless to proceed. As the court discusses below, the only remedy available to Douglas is equitable relief; accordingly, this court, not the Court of Federal Claims, has jurisdiction. *See* 42 U.S.C. § 2000e-16(c); the Tucker Act, 28 U.S.C. § 1491; *see also Hansson v. Norton*, 411 F.3d 231, 256 (D.C. Cir. 2005). Finally, the DOD argues the remedies Douglas seeks, including damages and attorney's fees, are not available to her under Title VII. In support of its position, the DOD references 29 C.F.R. § 1614.504(a), which provides: "The complainant may request that the terms of settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased." As the DOD notes, several courts have construed this regulation to exclude any remedy for breach of an EEO settlement agreement other than as expressly specified. *See Frahm v. United States*, 492 F.3d 258, 261 (4th Cir. 2007) ("The regulation sets out the only alternatives that may be chosen");

---

[8] 29 C.F.R. § 1614.504(a) provides, in relevant part: "If the complainant believes that the agency has failed to comply with the terms of the settlement agreement or decision, the complainant shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance."

*Harris v. Brownlee*, 477 F.3d 1043, 1047 (8th Cir. 2007); *Hansson*, 411 F.3d at 235. In response, Douglas states that she demanded reinstatement of her administrative claim in her notice to the agency. The issue before the court, however, is not the remedy Douglas sought during the administrative process, but rather what remedy she seeks in this case, before this court. Because Douglas seeks remedies in this case not available to her under Title VII, her claim must be dismissed.

Racial and Gender Discrimination

Douglas alleges two distinct claims of racial and gender discrimination, one occurring in 2003 and one in 2007. The DOD argues that Douglas' 2003 claim, concerning her employment in Fort Sam Houston, Texas, was settled by the parties' December 14, 2006 settlement agreement. The court agrees. An employee may waive her cause of action under Title VII as part of a settlement agreement. *See Jones*, 266 Fed. Appx. at 906. The interpretation of a settlement agreement is a matter of law; when interpreting a settlement agreement, the court gives its words their plain meaning. *Id.* The settlement agreement provided that "Ms. Douglas agrees to and hereby does waive and withdraw, with prejudice, all currently pending EEO complaints." (Doc. 15-4.) Accordingly, the court finds that Douglas has waived her 2003 discrimination claim.

Douglas' 2007 claim of discrimination concerns her employment in Kirkuk, Iraq. Title VII prohibits an employer from discriminating based on race or gender. *See* 42 U.S.C. § 2000e-2(a). Under Title VII, the plaintiff bears the burden of proving discriminatory treatment by a preponderance of the evidence. *Earley v. Champion Int'l Corp*, 907 F.2d 1077, 1081 (11th Cir. 1990). The plaintiff may establish a prima facie case of discrimination by showing that "(1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job." *Burke-Fowler v. Orange County, Fla.*, 477 F.3d 1319, 1323 (11th Cir. 2006). Once the plaintiff establishes a prima facie case, the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action. *Brooks v. County Comm'n*, 446 F.3d 1160, 1162 (11th Cir. 2006). If the employer

does so, the burden shifts back to the plaintiff to show that the employer's reason was a pretext for discrimination. *Id.* To show that the reason is a pretext for discrimination, the plaintiff must show "both that the reason was false, and that discrimination was the real reason." *Id.* at 1963 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)). Although the burden of production shifts between the parties, the burden of persuasion remains with the plaintiff throughout this analysis. *Id.*

The court need not decide whether Douglas has established a prima facie case of discrimination, because the DOD has articulated a legitimate, nondiscriminatory reason for transferring Douglas, specifically, that she had severe problems interacting with her supervisors and subordinates, and the record lacks any evidence of pretext.[9] The record clearly supports the DOD's position: the emails from Douglas' supervisors and associates portray her as harsh, confrontational, and unwilling to change or accept criticism. According to this evidence, Douglas publicly humiliated her employees, accused them of theft and dishonesty, and set mercurial policies. Each time Bradshaw and Williams provided guidance to Douglas, she responded by deflecting blame to her supervisors and subordinates. By October, 2007, Douglas' associates Jank and Jones had requested transfers, and Douglas' assistant team leader Aliilua had stepped down from his position, because of Douglas' management. Thus, the court finds the DOD has met its burden to

[9] Notwithstanding, the court finds that the DOD's transfer of Douglas constituted an adverse employment action. In addition to the transfer, however, Douglas alleges she was subjected to adverse employment action because the DOD: (1) denied her a qualified assistant team leader, (2) questioned her concerning management decisions, (3) denied her the use of the chain of command, (4) accused her of mistreating her staff, and (5) prepared an employee evaluation based on twenty-one days of a one hundred and eighty day evaluation period. An adverse employment action must effect "a serious and material change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). At the outset, the court notes that Douglas' characterization of these events is not supported by the record. For example, Douglas complains that the DOD questioned her management, denied her the use of the chain of command, and accused her of mistreating staff. The record establishes that Douglas' subordinates, not the DOD, initially complained about mistreatment, then the DOD, entirely appropriately, investigated the complaints. Furthermore, rather than denying Douglas the use of the chain of command, the DOD attempted to facilitate communication between Douglas and her associates. Moreover, the record is devoid of any evidence that Douglas was adversely affected by her "satisfactory" performance evaluation, or that her assistant team leader was unqualified. Under no characterization of Douglas' complaints would the court find that they constituted adverse employment actions, because all fall far short of the *Davis* "serious and material change" standard.

produce evidence of a legitimate, nondiscriminatory reason for transferring Douglas. *See Osahar*, 263 Fed. Appx. at 761. Douglas attempts to show pretext by asserting that at least some of the employees left for personal reasons, and that not all of the problems were her fault.[10] In addition, Douglas provides a letter of support from Civil Affairs Team Chief Christopher Trailer, and a September 25, 2007 email from Williams in which he wrote that Kirkuk's inventory situation looked good.[11] None of the evidence Douglas has provided calls into question the legitimacy of the DOD's concerns about Douglas' interactions with her subordinates and supervisors.[12] Moreover, even if Douglas could establish that the DOD's proffered reason were false, she has not offered any evidence that discrimination was the real reason for her transfer. *See Brooks*, 446 F.3d at 1163 (requiring a plaintiff seeking to avoid summary judgment on her discrimination claim to produce evidence that the defendant's asserted reason is false and that discrimination is the real reason). The court does "not sit as a super-personnel department that reexamines an entity's business decisions. . . Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000). An "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Comm.*, 738 F2d 1181, 1187 (11th Cir. 1984). Thus,

---

[10] Douglas appears to be referring to Stacy Miller, who left Iraq to be with her children; Alvin Johnson, who transferred for an unspecified reason; and Jank, who married after leaving. As the DOD notes, Miller, who left for a personal reason unrelated to Douglas, had complaints about her management of the Kirkuk store. Similarly, although Johnson did not specify his reason in his transfer request, the record indicates he had problems with Douglas' management as well. Jank, like Jones, explicitly stated that Douglas was the reason for his transfer request.

[11] In his letter, Trailer states he knew Douglas from interactions with her at the Exchange, and because she volunteered at the Morale, Welfare and Recreation unit. He doesn't mention ever having witnessed Douglas interact with her supervisors or subordinates; instead, his letter contains abstract statements that good leadership sometimes makes people unpopular.

[12] Indeed, Douglas appears to recognize that she cannot effectively rebut the DOD's well-documented issues with her interpersonal skills; instead, she claims her supervisors and employees created a false email record by making baseless complaints and allegations about her. Not only does Douglas provide no evidence for this claim, but her own emailed statements are wholly consistent with the rest of the email record.

the DOD is entitled to summary judgment on Douglas' claim of discrimination.

Retaliation

Title VII prohibits an employer from retaliating against an employee who has "made a charge, testified, or participated in any manner in an [Equal Employment Opportunity] investigation, proceeding or hearing." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must show: (1) the plaintiff engaged in statutorily protected conduct, (2) the plaintiff suffered an adverse employment action, and (3) the adverse action was causally related to the protected expression. *Williams v. Motorola*, 303 F.3d 1284, 1291 (11th Cir. 2002). Retaliation claims under Title VII are subject to the same burden shifting analysis as discrimination claims. *See Holifield*, 115 F.3d at 1566.

There is no dispute that Douglas engaged in statutorily protected conduct when she filed her 2003 claim of discrimination, or that she suffered an adverse employment action when the agency transferred her from Kirkuk, Iraq. The DOD argues, however, that there was no causal relationship between Douglas' transfer and her protected conduct, because neither Bradshaw nor Williams had any knowledge of Douglas' protected conduct at the time the transfer decision was made.[13] Specifically, according to the DOD, Williams sent an email on October 8, 2007, to Johnson, the Area Manager, which caused Johnson to end Douglas' tour; and it was not until October 9, 2007, when Douglas contacted the agency to protest her termination, that Williams and Bradshaw were first informed of her settlement agreement. In response, Douglas offers the deposition testimony of Herman Taylor, an agency employee stationed at Kirkuk who testified that both Bradshaw and Williams spoke to him, during the first week of October, 2007, of Douglas' prior EEO complaint and settlement agreement. According to Taylor, Bradshaw explained the agreement only permitted Douglas to be an Assistant Team Leader; Douglas had breached the agreement

---

[13] In addition, the DOD argues the ten month period between the settlement and Douglas' transfer is insufficient to create a jury issue on causation. *See Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) (holding that a three month period was insufficient to create a jury question, in the absence of other evidence of retaliation). In this case, however, Douglas argues the record contains other evidence relevant to her claim of retaliation.

by accepting the promotion to Team Leader; and Bradshaw now had enough to remove Douglas.[14] Douglas claims Taylor's testimony clearly evidences a scheme by Bradshaw to promote Douglas, and cause her to fail, in order to retaliate against Douglas for her prior protected conduct: "By transferring [Douglas] into the Team Leader position, [Bradshaw] would finally be able to get rid of her." (Doc. 37, at 16.) The court disagrees. For Douglas' promotion to have been part of Bradshaw's scheme to retaliate against Douglas, Bradshaw would have had to have known about Douglas' protected conduct at the time of the promotion. Douglas was promoted to the Team Leader position in July, 2007, but there is no evidence that Bradshaw knew about Douglas' protected conduct before October, 2007. Furthermore, Bradshaw repeatedly requested that Douglas be transferred in June of 2007, as did Gunderson, establishing that the decision was actually made well in advance of October 8, 2007. Because the record is devoid of evidence supporting a causal relationship between her transfer and her protected conduct, Douglas has failed to establish a prima facie case of retaliation. Even if Douglas could establish a prima facie case, for the same reasons discussed in the context of her discrimination claim, she has failed to demonstrate that the DOD's legitimate, nondiscriminatory reason for her transfer was a pretext for discrimination. Accordingly, the DOD's Motion for Summary Judgment (doc. 29) is GRANTED. The clerk shall enter final judgment in favor of the DOD and against Douglas, with costs taxes against Douglas.

**DONE and ORDERED** this 31st day of March, 2010.

s/ *M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

[14] Taylor's testimony regarding Williams's statements is unclear. Viewed in the light most favorable to Douglas, Taylor's testimony indicates that he received similar information about Douglas' prior EEO complaint from Williams.